IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

_____

CHARLINE FLYNN, as Personal
Representative of the Probate Estate
of Errol Flynn, derivatively
on behalf of the nominal defendant,
ESF CONSTRUCTION CO., INC.

Plaintiffs,

v.                                                        Case No. _____

MARTIN S. BELZ and                           VERIFIED SHAREHOLDER
JIMMIE WILLIAMS,                              DERIVATIVE COMPLAINT

                                                          JURY TRIAL DEMANDED

Defendants.

and

ESF CONSTRUCTION CO., INC.
Nominal Defendant.

_____

Plaintiff, Charline Flynn ("Flynn"), by her attorney, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

NATURE OF THE ACTION

1. This is a shareholder derivative action brought pursuant to TENN. CODE ANN. § 48-17-401 and Tennessee Rule of Civil Procedure 23.06 by a shareholder of ESF Construction Company ("ESF" or the "Company"), on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment that occurred between late January, 2010 and the present which have caused substantial losses to ESF and other damages. The defendants actively ignored their fiduciary duties to ESF and put

1

their own personal interests above those of ESF and its shareholders by: a) failing to pursue a culpable party (Harold Wormser, the Company's accountant and auditor), who failed to detect and prevent embezzlement of ESF funds by a former employee, Sheri Davis Price Martin; and b) by attempting to dissolve ESF so that Martin Belz could use ESF employees and assets to "step into the shoes" of ESF with a competing construction business in Florida and elsewhere.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. 1331, and 28 U.S.C. 1332(a)(1) and because complete diversity exists between the plaintiffs and defendants, and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

3. This action is not a collusive one designed to confer jurisdiction on a court of the United States which it would not otherwise have.

4. Venue is proper in this Court because nominal defendant ESF is headquartered in this district and thus a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district.

5. One or more of the defendants resides in this district.

## THE PARTIES

6. Plaintiff Charline Flynn, a resident and citizen of the state of Florida, is the Personal Representative of the Probate Estate of Errol Flynn, which is being administered in the Circuit Court of The Ninth Judicial Circuit, In and For Orange County, Probate Division, File No. 2011-CP-000673-0. Under Section 733.612(20) of the Florida Statutes, a Personal Representative "can prosecute or defend claims or proceedings in any jurisdiction for protection of the estate and of the personal representative." The Probate Estate of Errol Flynn is an owner and holder of ESF common stock.

7. Nominal defendant ESF is a corporation organized and existing[1] under the laws of the state of Tennessee with its headquarters located at Suite #249, 5118 Park Avenue, Memphis, Tennessee 38117. ESF is a construction company whose principal construction jobs are in the Orlando, Florida area. Formerly known as Belz Construction Company ("BCC"), BCC completed projects for Belz Enterprises and other Belz entities in Memphis, Tennessee; Nashville, Tennessee; Pigeon Forge, Tennessee; Lakeland, Tennessee; Orlando, Florida; Tampa, Florida; St. Augustine, Florida; Allen, Texas; Wentzville, Missouri; Natick, Massachusetts; Randolph, Massachusetts; Somerville, Massachusetts; San Juan, Puerto Rico; Greenville, South Carolina; Little Rock, Arkansas; Las Vegas, Nevada, and other locations around the country.

8. BCC was formed in 1981 by Ron Belz, Marty Belz, Gary Belz, Sam Reaves ("Reaves"), and Errol Flynn. Reaves and Errol Flynn were each issued 30 shares of stock, and Ron Belz, Marty Belz and Gary Belz were each issued 20 shares of stock. This division gave Reaves and Flynn 50% of the company, with the other 50% being owned by the Belz brothers.

9. BCC later bought back the shares owned by Reaves and Gary Belz. After these company purchases, Flynn owned 42.86% and Ron Belz and Marty Belz each owned 28.57% of BCC's common stock.

10. Errol Flynn was licensed in Tennessee as a general contractor, and all BCC projects were based on permits issued in his name or the name of Errol S. Flynn d/b/a Belz Investment Company, which was another company which operated under the Belz Enterprises umbrella.

11. Until the Shari Davis Price Martin embezzlement described later herein, BCC used the same logo, letterhead, business cards, software, policies and procedures and customized office suppliers used by Belz Enterprises.

---

[1] On April 1, 2011, the defendants filed purported Articles of Dissolution dated March 28, 2011 with the Tennessee Secretary of State.

12. Defendant Martin S. Belz ("Marty Belz"), a resident and citizen of the state of Tennessee, is, and at all times relevant hereto was, President, a shareholder, and a member of the Board of Directors of ESF. With his brother Ronald A. Belz, Marty Belz controlled ESF at all times relevant hereto.

13. Defendant Jimmie Williams, a resident and citizen of the state of Tennessee, is, and at all times relevant hereto, was the Secretary and a Director of ESF. Jimmie Williams is also the Chief Financial Officer of Belz Enterprises, an officer in a number of other entities controlled by Marty Belz and Ron Belz, and, at all times relevant hereto, was beholden to and acted at the direction of, Marty Belz and Ron Belz.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

14. By reason of their positions as officers and directors of ESF and because of their ability to control the business and corporate affairs of ESF, Marty Belz and Jimmie Williams owed ESF and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage ESF in a fair, just, honest and equitable manner. Marty Belz and Jimmie Williams were and are required to act in furtherance of the best interests of ESF and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

15. Each director and officer of the Company owes to ESF and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of ESF and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

16. Marty Belz and JimmieWilliams, because of their positions of control and authority as officers and/or directors of ESF, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

17. To discharge their duties, the officers and directors of ESF were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and Directors of ESF were required to, among other things:

    (a) refrain from acting upon material inside corporate information to benefit themselves;

    (b) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

    (c) remain informed as to how ESF conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices; and

    (d) ensure that the Company took all prudent measures to recover damages related to the Sheri Davis Price Martin defalcations from all culpable parties, including parties who were related by marriage to them (e.g., Harold Wormser, the Company's auditor).

18. Marty Belz and Jimmie Williams, by virtue of their positions as officers and Directors, owed to the Company and its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Marty Belz and Jimmie Williams complained of herein involves a knowing and culpable violation of their obligations as Directors and officers of ESF, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that Marty Belz and Jimmie Williams were aware or should have been aware posed a risk of serious injury to the Company.

19. Marty Belz and Jimmie Williams breached their duties of loyalty and good faith by refusing to pursue Harold Wormser, the Company's accountant and auditor, for his negligence in failing to detect a multi-year embezzlement scheme perpetrated by Sheri Davis Price Martin, a

company employee. In addition, Marty Belz and Jimmie Williams breached their duties of loyalty and good faith by dissolving (or attempting to dissolve) the Company in order to allow Marty Belz (through an entity he owns called Martin Belz Construction Company, LLC) to utilize company confidential information, employees and other assets to step into the shoes of the Company in Florida and elsewhere.

### CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

20.     In committing the wrongful acts alleged herein, Marty Belz and Jimmie Williams have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, Marty Belz and Jimmie Williams further aided and abetted and/or assisted each other in breach of their respective duties.

21.     Marty Belz and Jimmie Williams violated their fiduciary duties to the Company by: (i) failing to file an accounting malpractice suit against Harold Wormser for his failure to discover a Sheri Davis Price Martin's embezzlement over an eight (8) year period; and (ii) dissolving (or attempting to dissolve) the Company was so that Marty Belz could utilize Company proprietary information and employees to take over the Company's former operations and operate Martin Belz Construction Company, LLC in its place.

22.     Marty Belz and Jimmie Williams conspired and entered into a common course of conduct to disguise their violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment. The reason Marty Belz and Jimmie Williams conspired and entered into a common course of conduct was to: (i) avoid adverse publicity for Belz Enterprises which would be brought to light by a lawsuit against Harold Wormser related to the Sheri Davis Price Martin embezzlement (thereby avoiding doubt on the part of Belz Enterprises financing partners that Belz Enterprises' financial controls were proper

and effective); (ii) avoid family pressures and bad feelings which result from filing suit against Harold Wormser, a relative of Ron Belz and Marty Belz by marriage; (iii) avoid a forensic accounting of the ACH account and the account at Metro Financial Services Corporation, as they did not want it to become known that a low-level bookkeeper had been able to circumvent the control features implemented by Belz Enterprises for the protection of the Company's funds, and was able to do so because they had eliminated safeguards that were in place to prevent a defalcation exactly such as this from happening; and (iv) dissolve the company so Marty Belz (using Martin Belz Construction Co., LLC) could take over work typically performed by BCC, using company employees, records and assets.

23. Each of Ron Belz and Jimmie Williams aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, Jimmie Williams and Marty Belz each acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his overall contribution to and furtherance of the wrongdoing.

THE COVERUP

24. Sheri Price Davis Martin was employed at BCC as a bookkeeper from March 15, 1999 through October 17, 2008. During that period, Davis was responsible for managing the ACH account used by BCC/ESF for payroll and expense reimbursement, and no one else at the Company managed that account.

25. In October, 2008, after Sheri Davis Price Martin was laid off, another BCC employee named Melissa Dakin discovered irregularities in the Company's bank account records and brought that fact to the attention of Errol Flynn. Shortly thereafter, Harold Wormser was fired as the company's CPA, and Sammie Morris (a licensed Certified Public Accountant, a former shareholder in the company and a current Belz Enterprises accountant) was engaged to complete

7

an audit of the ACH account. Morris discovered the extent of the embezzlement, and, after completing her audit, recommended that the Company pursue an accounting malpractice claim against Harold Wormser.

26.     Sheri Davis Price Martin subsequently confessed to a multi-year embezzlement scheme perpetrated by fraudulently creating ACH distributions in the name of Steve Conquest, Errol Flynn, Ken Guida and Johnny Smith, all employees of the Company. The ACH distributions were made without the knowledge, permission or consent of Conquest, Flynn, Guida, Smith or the Company, and the embezzled funds were deposited into bank accounts that Sheri Davis Price Martin controlled. The Company subsequently sued Sheri Davis Price Martin for embezzlement and theft and obtained a judgment against her.[2]

27.     After Sheri Davis Price Martin's embezzlements were discovered, Ron Belz intentionally misled the public about his family's involvement with the Company in an attempt to perform "damage control" for Belz Enterprises. Attached hereto as Exhibit A is a copy of a January 10, 2009 Memphis Commercial Appeal article featuring an interview with Ron Belz. In the article, Ron Belz told the reporter that the Company was not affiliated with Belz Enterprises, and that it was owned by chief operating officer and primary investor Errol Flynn (Plaintiff's deceased husband).

28.     On January 12, 2009, Ron Belz sent the original of the memo attached hereto as Exhibit B to Errol Flynn. In the memo, Ron Belz brags about how he diffused the potential bad publicity at "our company", then states:

---

[2] Belz Construction Company, Inc. sued Sheri Davis Price Martin for embezzlement and theft. On September 30, 2009, in the case of Belz Construction Company, Inc. v. Sheri Davis Price Martin, CH-08-2295-2, Chancellor Arnold B. Goldin of the Chancery Court of Shelby County, Tennessee entered an Order Granting Motion for Summary Judgment of Plaintiff Belz Construction Company, Inc. As To Liability And Compensatory Damages, Entering Judgment Against Defendant, And Setting Writ Of Inquiry To Determine Amount Of Punitive Damages which found that Sheri Davis Price Martin embezzled and stole money from the Company, and awarded $776,391.49 in compensatory damages.

8

> One of the significant problems that this has caused relates to the impact In the marketplace associated with a misunderstanding about exactly who "BCC" is, and its relationship to the collection of Belz Enterprises. As you know, the newspaper received word of this matter and began research for a significant story on this. This was done because of the name, connection and the size of the claim that was made public in the court filings. I spent several hours working with the newspaper on getting the facts right, the most important of which is that this entity is in no way affiliated with what people around Memphis commonly refer to as "Belz Enterprises," In addition, if our financing partners believe that we sustained a million dollar loss, it could have had a negative effect as well. I'm sure that you saw the article in Saturday's paper. I think that came out as best as we could have hoped, other than for them to not publish anything.
>
> In light of the risks that are associated with this name confusion going forward, I would request that Errol take whatever steps are necessary to formally change the name of the company to one that does not have the word "Belz" anywhere in it. Several years ago we agreed not to use that name in any way related to work in the Memphis metro marketplace. Even the phonebook entries were modified to some degree. I think the name "Flynn Construction Co" was added to the listings.
>
> It would be fine with me to officially change Belz Construction to Flynn Construction. It is a simple matter to do this with a charter amendment and filing that with the Secretary of State. Of course you need to notify your customers as well as the IRS.
>
> If you want me to I can get Andrea to draft the Charter amendment.

See Exhibit B attached hereto.

29. Contrary to Ron Belz's statements to the Commercial Appeal reporter, BCC was not only "affiliated" with Belz Enterprises, BCC's finances were in fact operationally integrated with Belz Enterprises' finances, and had been so integrated for almost thirty (30) years. All cash in BCC's bank account at First Tennessee Bank in excess of working capital needs was transferred daily by Belz Enterprises into its account at Metro Financial Services Corporation ("MFSC"), another entity controlled by Ron and Marty Belz. Those funds were then invested in short-term securities, and a statement was issued monthly to BCC, by Belz Enterprises, confirming the account balance, monthly interest, and interest rate. This monthly statement, provided by Belz Enterprises, was then used by BCC's bookkeeper to make a General Ledger Journal Entry into the

Company's accounting system at the end of each month, reconciling the balance in the Company's books (Account 1010 - Metro Financial Services Corporation).

30. From March 30, 1981 until 1999, BCC had other internal safeguards in place to prevent an occurrence of employee theft. These safeguards were outlined in a BCC Certified Resolution of Board of Directors dated March 31, 1981, a copy of which is attached hereto as Exhibit C. The safeguard required two (2) signatures on any check, draft or instrument executed by BCC on BCC's account at First Tennessee Bank in Memphis, Tennessee (hereafter the "Two Signatures Policy"). The Two Signatures policy required that in order for BCC's bookkeeper to access those funds, she (or he) had to fill out a Belz Enterprises' General Ledger Request form, requesting that a specific amount of money be transferred from Belz Enterprises' account at MFSC, into BCC's operating account at First Tennessee Bank. That General Ledger Request form then had to be reviewed and approved by Errol Flynn, Marty Belz or Ron Belz, and then forwarded to Williams, who would complete the transfer, or delegate that responsibility to another Belz Enterprises' employee in the accounting department at Belz Enterprises.

31. The "Two Signatures Policy" worked perfectly for approximately 17 years, and no bookkeeper for BCC ever embezzled money prior to Sheri Davis Price Martin. Sometime in 1999, Ron Belz issued a directive as the President of Belz Enterprises, notifying all Belz employees (including employees of BCC) of a new Belz Enterprises policy which required all employees to be capable of receiving their payroll payment by direct deposit (i.e., automated clearing house or ACH). The directive also allowed ACH payments on other Belz obligations (accounts payable, reimbursables, etc.).

32. Ron Belz's change in accounting procedures for all Belz entities removed the protection afforded by the Two Signatures Policy, and allowed Sheri Davis Price Martin unsupervised access to over a million dollars of BCC funds in Belz Enterprises' account at MFSC.

The ACH payment directive also ended any requirement that bookkeepers like Sheri Davis Price Martin complete a Belz Enterprises General Ledger Journal Request Form to effect a transfer of funds from MFSC to BCC's account at First Tennessee Bank, and vice versa.

33. After Ron Belz's directive, a bookkeeper like Sheri Davis Price Martin had only to call Belz Enterprises' accounting department and verbally request the transfer of any amount of money she wished from BCC's account at MFSC to BCC's account at First Tennessee Bank. A BCC bookkeeper no longer needed Errol Flynn's, Marty Belz's, or Ron Belz's signature on a Belz Enterprises General Ledger Request form, nor did a BCC bookkeeper need any backup documentation to affect the transfer. The bookkeeper could simply pick up the phone, call Belz Enterprises' accounting department, and request that funds be transferred. The bookkeeper could then transfer those funds from BCC's working capital account at First Tennessee Bank into any number of accounts, like the accounts set up by Sheri Davis Price Martin at First Tennessee Bank, Wachovia Bank, and Memphis Area Teachers Credit Union.

THE CLAIM AGAINST HAROLD WORMSER AND THE WORMSER FIRM

34. Harold Wormser is the principal of The Wormser Firm, a Certified Public Accounting firm located in Memphis, Tennessee. Harold Wormser is related by marriage to Ron and Marty Belz, and, from at least 1990 through 2008, audited the balance sheets and financial statements of BCC.

35. In January 2009, the Company and Harold Wormser entered into a tolling agreement which tolled all of the Company's claims against Harold Wormser during a period which lasted from January 27, 2009 until January 27, 2010. A copy of the Wormser Tolling Agreement is attached hereto as Exhibit D.

36. On June 2, 2009, Teresa Boyd of The Richardson Law Firm (the law firm hired by the Company to pursue the claim against Shari Davis Price Martin) recommended that the

Company engage the services of a forensic accounting firm for an initial review at an approximate cost of $7,500 for the pursuit of a "worthwhile" accounting malpractice claim against Harold Wormser.  A copy of this correspondence to Errol Flynn is attached hereto as Exhibit E.

37.     In 2006, Errol Flynn was diagnosed with prostate cancer.  In early 2009, Errol Flynn's pain became severe, and by June 2009, Errol Flynn had withdrawn from the day to day activities of ESF.  In July 2009, Marty Belz, Ron Belz and Jimmie Williams decided (without telling Errol Flynn) that the Company would not pursue Harold Wormser for malpractice related to his failure to discover Sheri Davis Price Martin's embezzlement.  Marty Belz, Ron Belz and Jimmie Williams fraudulently concealed this decision from the plaintiff, and Marty Belz expressly represented that the Company would pursue Wormser, as set forth below.

38.     As late as November 2009, Errol Flynn believed that the Company was going to pursue a malpractice claim against Harold Wormser, and even sent Wormser a letter asking him to put his malpractice carrier on notice.  A copy of Errol Flynn's letter to Harold Wormser is attached hereto as Exhibit F.  At the time of his death in March 2010, Errol Flynn believed that the Company was going to pursue the malpractice claim against Harold Wormser.

39.     In 2010 and 2011, Marty Belz told Charline Flynn and her son, Derek Flynn, on numerous occasions that the Company had hired a Nashville law firm to pursue Harold Wormser.  Unbeknownst to the Flynns, any chance the Company had to pursue Harold Wormser expired as of January 27, 2011, one year after the termination date contained in the ESF – Wormser Tolling Agreement.  The Flynns first learned that the Company could no longer pursue Harold Wormser when they (through counsel) were provided with a copy of the Tolling Agreement in December 2011.

## MARTIN BELZ CONSTRUCTION COMPANY, LLC

40. As a director of the Company, Marty Belz has a fiduciary duty to act in the Company's best interests. Rather than continue to operate the Company, Marty Belz, Ron Belz and Jimmie Williams have allowed Marty Belz to "ramp up" and operate Martin Belz Construction Company, LLC ("MBCC") in the same business (full service commercial general contracting, with experience in construction and remodeling of hotels, shopping malls, retail stores, office stores and restaurants), utilizing Company assets and Company employees.

41. Attached hereto as Collective Exhibit G is a copy of a portion of MBCC's internet advertisement, where MBCC advertises the "over 30 years experience" of the principals. MBCC's advertises its experience in Hotels, Retail Spaces, Restaurants and Mall Construction by listing a number of BCC projects, all of which were under the direction of Errol Flynn. The CEO of MBCC is Johnny Smith, who gained his experience working alongside Errol Flynn as a Project Manager for BCC for 15 years.

## *ULTRA VIRES* ACTION

42. Jimmie Williams and Marty Belz put their own interests and the interests of BCC's related entities above the interests of ESF when they failed and refused to authorize ESF to pursue Harold Wormser and his accounting firm for damages for Wormser's negligence in failing to discover Shari Davis Price Martin's embezzlement.

43. Jimmie Williams' and Marty Belz's refusal to authorize BCC\ESF to pursue Harold Wormser for the losses caused by Shari Davis Price Martin's embezzlement damaged the Plaintiff. Without any recovery of the embezzled funds, the value of Plaintiff's ESF shares was substantially reduced.

44. Jimmie Williams and Marty Belz also dissolved (or attempted to dissolve) ESF so that Marty Belz (using MBCC) could take over work typically performed by the Company, using Company employees, records and assets.

### PLAINTIFF DEMAND FOR BOARD ACTION AGAINST THE DEFENDANTS

45. In August 2012, Plaintiff through counsel made demand upon counsel for the Company that the Company's Board of Directors file a Shareholder Derivative Lawsuit against Ron Belz and Marty Belz by providing a copy of a Complaint in draft form. Counsel for Ron Belz and Marty Belz produced copies of annual reports filed with the Tennessee Secretary of State which indicated that Ron Belz was not an officer or director of ESF in 2010 and 2011.  In response to the proof provided by counsel for Ron Belz and Marty Belz, Plaintiff amended her draft Complaint to name Jimmie Williams as a defendant in place of Ron Belz.  Plaintiff's demand that suit be filed against Marty Belz and Jimmie Williams was also rejected.

### COUNT I – BREACH OF FIDUCIARY DUTY

46. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

47. The defendants owe the Company fiduciary obligations.  By reason of the fiduciary relationships, the defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty and due care.

48. The defendants, and each of them, violated and breached their fiduciary duties of good faith, fair dealing, loyalty and due care.

49. Each of the defendants abdicated their duty to act in the best interests of the Company by failing to authorize the Company to file suit against Harold Wormser, and by dissolving or attempting to dissolve the Company so that Marty Belz could use Company employees and assets to operate a competing business.

50. As a direct and proximate result of the defendants' breaches of their fiduciary duties, defendants have caused, and will continue to cause, the Company to suffer substantial monetary damages as a result of the wrongdoing described herein.

51. The Company has been directly and substantially injured by reason of the defendants' intentional breach and\or reckless disregard of their fiduciary duties to the Company. Plaintiff, as a Shareholder and representative of the Company, seeks damages for the Company, in an amount to be proven at trial.

## COUNT II – UNJUST ENRICHMENT AND BREACH OF DUTY OF LOYALTY
## MARTY BELZ

52. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

53. As a result of his use of Company employees and assets, Marty Belz has been and will be continue to be unjustly enriched at the expense of and to the detriment of the Company.

54. Accordingly, this Court should order Marty Belz to disgorge all profits, benefits and other compensation obtained by him from his wrongful conduct and fiduciary breaches described herein.

## COUNT III – WASTE OF CORPORATE ASSETS

55. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

56. By engaging in the wrongdoing alleged herein, defendants wasted corporate assets by, among other things, failing to recover damages from Harold Wormser, and by damaging the goodwill and operational ability of the Company by allowing Company assets and employees to be used by a competing entity, for which they are liable.

57.     As a direct and proximate result of defendants' wrongful conduct, the Company has suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company (believed to be approximately $1,000,000.00) as a result of the defendants' breaches of fiduciary duties, gross mismanagement, waste of corporate assets and unjust enrichment;

B.     Extraordinary equitable and/or injunctive relief as permitted by law and equity, including declaring the improper distribution of corporate assets complained of herein to be null and void;

C.     Awarding to the Company restitution from Marty Belz, and ordering disgorgement of all profits, benefits and other compensation obtained by Marty Belz as a result of the conduct alleged herein;

D.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses;

E.     Granting such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS TRIAL BY JURY.

Dated the ___ day of November, 2012.

                                                  Respectfully Submitted:

                                                  By:     /S/ Paul Billings_____
                                                          Paul B. Billings, Jr. (TN Sup. Ct. 010906)
                                                         Paul Billings Law
                                                         5305 Distriplex Farms Drive
                                                         Memphis, TN 38141-8231
                                                         (901) 881-9515 phone
                                                         (866) 772-4244 fax
                                                         paul@paulbillingslaw.com

STATE OF FLORIDA
COUNTY OF ORANGE

CHARLINE FLYNN, after being duly sworn according to law, makes oath and says that the allegations contained in the foregoing Verified Shareholder Derivative Complaint are true to of her own knowledge and that the same are not made out of levity or collusion with the defendants, but in sincerity and truth, and for the causes stated in the Complaint, and that the plaintiffs are justly entitled to the redress sought, to the best of her knowledge and belief.

_____
CHARLINE FLYNN

SWORN TO and Subscribed before me this the 2nd day of November, 2012.

_____
NOTARY PUBLIC

My Commission Expires:
8/26/2013

Notary Public State of Florida
David E Mojica
My Commission DD920268
Expires 08/26/2013

17